UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Wellison DaSilva Leal,

    Plaintiff,

        v.                                  Civil Action No. 5:12-cv-213

Northwest State Correctional Facility,

    Defendant.

## REPORT AND RECOMMENDATION
(Doc. 9)

Plaintiff Wellison DaSilva Leal, an inmate in the custody of the Vermont Department of Corrections, proceeding *pro se*, has commenced this action against Defendant Northwest State Correctional Facility ("Northwest") pursuant to 42 U.S.C. § 1983, alleging unspecified violations of rights guaranteed by the United States Constitution. Leal complains that he was the subject of a racist remark by a correctional officer at Northwest, causing him to leave his work station, which resulted in his loss of prison employment and transfer to another facility. Presently before the court is the Vermont Department of Corrections' ("DOC") Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action. (Doc. 9.)

For the reasons stated below, I recommend that the DOC's Motion to Dismiss be GRANTED, and Leal be granted leave to amend his Complaint.

## Background

For purposes of the Motion to Dismiss, the facts set forth in the Complaint are accepted as true. Those facts are summarized as follows.

From March until an unspecified date in April 2011, Leal was employed in the prison kitchen during his incarceration at Northwest, which is located in St. Albans, Vermont. While Leal and another inmate, Will Nelson, were "working the line" and "mak[ing] fun" of each other's ethnic background, correctional officer "Meshna" made an allegedly racist remark directed at Leal. (Doc. 5 at 4.) Leal became angry and announced his intention to leave the kitchen. The correctional officer advised Leal that the kitchen was short-staffed and if he left work, Leal would be terminated. Leal was in fact terminated, and he claims the basis for that termination was his "not wanting to stay [at work] after [he] was insulted." (*Id.*)

Leal filed "many grievances," which were signed by "a unit officer," regarding this incident. (*Id.*) Additionally, one week after the incident, Leal called "prisoner's rights" but never received a return call. (*Id.*) Leal was then transferred to a different correctional facility located in Newport, Vermont. Leal sent all his grievances to the "department of human rights from the Newport facility." (*Id.*) Later, Leal telephoned the "Human [R]ights Commissioner," and was informed that "they never receaved [sic] anything [from him]." (*Id.*)

Leal complains that he feels "hurt and ashamed" as a result of these events. (Doc. 5 at 5.) His Complaint does not specify the relief he requests, stating only that he seeks "to sue the Northwest State Correctional Facility and the officer involved[,] K1

Meshna[,] for the racist statement[,] and the facility for neglecting [his] requests and grievances." (Doc. 5 at 7.)

The DOC has moved to dismiss the Complaint under Rule 12(b)(6) on the following grounds: (1) official capacity immunity; (2) failure to allege a violation of a constitutional right or a federal law; and (3) failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. 9.) Leal has not filed a response to the State's Motion in the district court. Rather, shortly after the Motion was filed, Leal filed a Notice of Appeal in the Second Circuit Court of Appeals. (Doc. 10.) Leal's appeal was dismissed by the Court of Appeals on March 15, 2013. (Doc. 14.)

## Standard of Review

### I. Motion to Dismiss for Failure to State a Claim

The DOC has filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Twombly*, 550 U.S. at 555, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678. A complaint states

3

a plausible claim when the plaintiff pleads non-conclusory facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating Leal's Complaint, it must be recognized that the court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nonetheless, *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see also Bowman v. Waterside Plaza*, No. 07 Civ. 239(CM)(MH), 2010 WL 2873051, at *4 (S.D.N.Y. July 21, 2010) ("the 'plausibility' standard articulated in *Twombly* and *Iqbal* applies to the pleadings of *pro se* plaintiffs").

As noted above, Leal has not filed a response to the DOC's Motion to Dismiss. Nonetheless, a plaintiff's failure to oppose a Rule 12(b)(6) motion does not by itself merit dismissal of a complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). Rather, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Goldberg*, 599 F.3d at 183-84 (citing *McCall*, 232 F.3d at 322-23). The court therefore must consider the substance of Leal's Complaint, despite his failure to oppose the DOC's Motion to Dismiss for failure to state a claim.

4

## II. Section 1983 Action

In an action brought under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting under color of state law deprived him of a federal constitutional right. 42 U.S.C. § 1983. Leal has filed this action against a prison facility, naming the "Northwest State Correctional Facility" as the sole defendant.[1] (Doc. 5 at 1.) A prison facility is not a "person" within the meaning of § 1983 and is therefore not amenable to suit under that section. *See, e.g.*, *Whitley v. Westchester Cnty. Corr. Facility Admin.*, No. 97 CIV. 0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); *Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); *see also Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973); *Monroe v. Pape*, 365 U.S. 167 (1961). Thus Leal's Complaint is subject to dismissal on this ground. The State, however, in moving to dismiss the Complaint on behalf of Northwest, has construed the Complaint as Leal's intent to sue the State of Vermont and more specifically the DOC. (*See* Doc. 9 at 2 n.1.) I recommend that the court similarly construe the Complaint, especially in light of the liberal standard applied to *pro se* complaints.

## Discussion

## I. Eleventh Amendment Immunity

The DOC first argues for dismissal of Leal's claim by asserting that the DOC is immune from suit under the Eleventh Amendment to the United States Constitution. It has long been held that the Eleventh Amendment bars suits in federal court for damages

---

[1] Leal appears to have made a typographical error in naming himself as "Defendant" and the Facility as "Plaintiff" in his Complaint. (Doc. 5 at 1.)

against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state.") (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Congress has not abrogated Vermont's sovereign immunity from a § 1983 suit in federal court, and the State of Vermont has expressly preserved its immunity under the Eleventh Amendment. *See, e.g.*, 12 V.S.A. § 5601(g). Moreover, the United States Supreme Court has held that Congress did not intend to abrogate sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Accordingly, any claim for damages brought against the DOC should be DISMISSED.

## II. Failure to Exhaust Administrative Remedies

Next, the DOC argues that Leal has failed to exhaust his administrative remedies as required by the PLRA. The PLRA, both by its terms and as interpreted by the United States Supreme Court, imposes an exacting exhaustion requirement on all prisoners filing lawsuits under federal law. According to the statute, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The operative phrase "prison conditions" refers to "all inmate suits about prison life," regardless of whether these suits refer to general conditions applicable to all inmates or, as here, specific episodes applicable to only the inmate bringing suit. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory, *see Jones v. Bock*, 549 U.S. 199, 211 (2007), and must be "proper," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This means that, to bring a claim in federal court, an inmate must "compl[y] with the [correctional facility's] critical procedural rules" applicable to administrative grievances because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given fair opportunity to consider the grievance." *Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007) (internal quotation marks omitted).

Because proper exhaustion is determined by assessing whether an inmate fully complied with the facility's grievance rules, this court must look to the Vermont DOC grievance procedure to discern whether Leal "exhausted" those remedies. In Vermont, the DOC's grievance procedure allows an inmate to first lodge an informal complaint, either orally or in writing. If resolution is not reached to the inmate's satisfaction in forty-eight hours, he may begin the formal grievance process. That process requires a DOC staff member to investigate and recommend a resolution to a supervisor. If the supervisor agrees, the resolution is reported to the inmate, who may then appeal to the facility superintendent if still not satisfied. The facility superintendent may support, modify, or reject the resolution. If the superintendent's reply is not satisfactory to the

inmate, additional levels of appeal are available, eventually reaching the Commissioner, who is the final arbiter of inmate grievances. *LaBombard v. Burroughs-Biron*, Civil Action No. 2:09-CV-136, 2010 WL 2264973, at *3 (D. Vt. Apr. 30, 2010) (Conroy, Mag. J.), *adopted in full*, 2010 WL 2265004 (D. Vt. June 2, 2010). Again, PLRA exhaustion demands that Leal follow each of these steps, "and do[] so properly," before filing a federal lawsuit. *Woodford*, 548 U.S. at 90. This means that a plaintiff must have appealed his grievance all the way to the DOC Commissioner to have exhausted his remedies as required by the PLRA. However, because failure to exhaust is an affirmative defense, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." *Roland v. Smith*, No. 10 Civ. 9218 (VM), 2012 WL 601071, at *2 (S.D.N.Y. Feb. 22, 2012) (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

Here, the Complaint alleges that Leal both "filled [sic] every grievance possible" (Doc. 5 at 2) and that he "filled [sic] many grievances." (*Id.* at 4.) These grievances "were signed by a unit officer." (*Id.*) It is not clear from the face of the Complaint that Leal has not exhausted his administrative remedies, and thus dismissal is not appropriate for this reason at this stage of the litigation. *See McCoy*, 255 F. Supp. 2d at 249 ("[I]f, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle."); *see also, e.g.*, *Benjamin v. Flores*, No. 11–CV–4216 (ARR), 2012 WL 5289513, at *5 (E.D.N.Y. Oct. 23, 2012)

(collecting cases). Accordingly, dismissal for failure to exhaust administrative remedies should be DENIED.

## III. Failure to State a Claim

The DOC also moves to dismiss under Rule 12(b)(6), asserting that Leal has failed to state any claim that is actionable under 42 U.S.C. § 1983.

### A. Racist Remark

The DOC argues that the singular allegedly racist remark made by the correctional officer does not implicate a federal constitutional right. Leal does not state in his Complaint which constitutional provision applies to this claim. Nevertheless, verbal harassment, such as the remark alleged here, is an insufficient ground upon which to base a § 1983 claim in the absence of an allegation of a specific injury. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("[t]he claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed"); *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) (collecting cases). "Verbal threats, abuse and even vile language" do not arise to the level of a constitutional violation under 42 U.S.C. § 1983. *Mroz v. City of Tonawanda*, 999 F. Supp. 436, 465 (W.D.N.Y. 1998) (citing *Beal v. City of New York*, No. 92 Civ 0718 (KMW), 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994), *aff'd*, 89 F.3d 826 (2d Cir. 1995)). One district court explained: "verbal harassment or profanity alone, 'unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz*

*Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (quoting *del Carpio v. Walker*, No. Civ.A.95CV1502RSPGJD, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997). Courts have recognized rare exceptions to this law when the threat involved was "inspired by malice rather than merely careless or unwise zeal," such that it amounted to an abuse of official power that "shocks the conscience." *Mroz*, 999 F. Supp. at 465 (internal quotation marks omitted). Leal's Complaint is devoid of these types of allegations. Accordingly, his claims based on an allegedly racist remark made by a correctional officer should be DISMISSED.

### B. Loss of Employment

Similarly, Leal's Complaint fails to allege a constitutional provision or federal law that was abridged by his termination from kitchen employment at Northwest. To the extent Leal might intend to rely on the protections of the Due Process Clause, an inmate must first have a constitutionally protected liberty interest at stake. In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate's assignment to, or removal from, an institutional job is not an atypical event, but represents a commonplace occurrence in the day-to-day operations of a prison. Accordingly, inmates have no liberty interest arising under the due process clause in their prison job assignments, *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (per curiam), and Leal's due process claim should be DISMISSED.

## C. Failure to Investigate Leal's Grievances

Leal brings a separate cause of action based on the DOC's failure to investigate his grievances. As noted earlier, in order to succeed on a § 1983 claim, the plaintiff must show that he has been deprived of a constitutional or other federal right. 42 U.S.C. § 1983. Generally, violations of state laws or administrative procedures do not rise to the level of a constitutional violation. *See Watson v. City of New York*, 92 F.3d 31, 37 (2d Cir. 1996); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987). And courts have consistently held that, because grievance procedures are undertaken voluntarily by the states, they are not constitutionally required. One district court explained: "It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008) (collecting cases). Thus, Leal's claims based on an alleged failure to investigate his grievances cannot give rise to a claim under § 1983 and should therefore be DISMISSED.

## D. Retaliatory Transfer

Finally, Leal alleges that he was transferred from Northwest to another facility after he spoke to "prisoner's rights" about the events in the kitchen. (Doc. 5 at 4.) He fails to specify which constitutional rights he alleges were violated by the transfer. "Retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth

Amendments." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). "The Second Circuit has admonished district courts to approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 325 (W.D.N.Y. 2007) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)). To establish "a *prima facie* case of First Amendment retaliation, a plaintiff must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (quoting *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002)). Leal's Complaint is devoid of any allegation of a "causal connection" between his transfer and any protected speech or conduct by him. Moreover, the Complaint does not allege that Leal's transfer constituted an "adverse action." Accordingly, Leal's retaliatory transfer claim should be DISMISSED.

## IV. Leave To Amend

The Second Circuit has determined that a *pro se* complaint should not be dismissed without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). As explained above, Leal's Complaint does not sufficiently allege a violation of a constitutional provision. But because more precise pleading may

cure some or all of the Complaint's deficiencies, and because Leal has not yet amended, Leal should be granted leave to amend.

## Conclusion

The DOC's Motion to Dismiss (Doc. 9) should be GRANTED for the reasons stated above. Moreover, the Court should grant Leal thirty days from the Court's order to amend his Complaint. If Leal chooses to submit an amended pleading, the pleading shall be entitled "Amended Complaint" and must contain all claims against all parties, as it will supersede the original Complaint in all respects. If Leal fails or declines to file an Amended Complaint within the thirty-day period, this case should be DISMISSED for the reasons set forth above.

Dated at Burlington, in the District of Vermont, this 18th day of April, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).